## No. 17,748.

JOHN MEDINA *v.* PEOPLE OF THE STATE OF COLORADO.
(291 P. [2d] 1061)

Decided January 9, 1956.   Rehearing denied January 23, 1956.

Mr. CHARLES S. VIGIL, Mr. LEVI MARTINEZ, for plaintiff in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. NORMAN H. COMSTOCK, Assistant, for the People.

*En Banc.*

MR. JUSTICE KNAUSS delivered the opinion of the Court.

PLAINTIFF in error, who will be referred to as defendant, was found guilty of a charge of assault with a deadly weapon with intent to do great bodily injury, and sentenced to a term in the state penitentiary. He brings the case here on writ of error.

It appears from the record that on September 25, 1954, defendant and Jack Garcia, together with a number of other persons were engaged in a dice game near a poolhall in Lariat, a community just south of Monte Vista, Colorado.

Gilbert Lopez had gone to Lariat to get his brother, and as they arrived at the place where the dice game was in progress, defendant and one Jake Garcia were fighting and Lopez was shot in the leg by a bullet from a .22 pistol. Lopez saw a gun during the fight and testified that the shot came from the place where the fight was taking place. The sheriff took defendant to the city jail. Defendant told the sheriff that he took the gun out to shoot at Garcia and "Lopez got in the way." When taken to jail defendant had three shells for a .22 pistol in his pocket. The sheriff testified that he recovered the weapon from Chopo Aragon and that defendant admitted it was his gun. He also testified that Lariat was in Rio Grande County. The Chief of Police of Monte Vista testified that defendant told him that Chopo Aragon had the gun which he used at the time Lopez was shot. Aragon testified that he received it from one of

several boys who were present at the dice game, but could not testify that the defendant gave it to him.

Defendant, in his own behalf, testified that he did not own the gun delivered to the sheriff by Aragon and which was an exhibit in the case; that he had never seen it before, and that he had never seen the bullets which the sheriff testified were found in defendant's pocket. He also testified that he had at no time possessed or owned any guns except a large weapon for killing big game; that a gun was discharged on the occasion in question, but he did not know who fired it.

Florence Brown and defendant's sister, Mary Medina, testified that they did not know of defendant ever having a .22 caliber pistol.

In rebuttal the Chief of Police of Monte Vista testified that in the spring of 1952 defendant was picked up at a dance and at that time was carrying a .22 loaded revolver, larger than the one in evidence.

It may be here noted that present counsel for defendant did not represent him in the trial court.

The several grounds urged for reversal are as follows:

1. That the evidence in the record is insufficient to prove the venue of the crime for which defendant was convicted. 2. That the trial court erred "in permitting, over defense objections, testimony of criminal record of Medina." 3. Several other matters respecting instructions given are urged. 4. That the prosecution failed to prove intent on the part of defendant to assault Lopez.

The first time that the matter of proof of venue was suggested appears in the brief of counsel for defendant. However, the record shows from the testimony of the sheriff of Rio Grande County that the episode which culminated in the shooting of Lopez took place in Rio Grande County.

On the trial the defendant took the stand as a witness on his own behalf and categorically denied that he discharged any firearm on the occasion in question. He also positively testified that he never owned or

had a pistol of any kind, and he produced two witnesses who testified that they did not know of his ever having a pistol. In rebuttal the prosecution called the Chief of Police who was interrogated as to whether or not he had ever seen defendant with a gun. In answer this witness testified that in 1952 Medina was picked up at a dance and brought over to the police station with a .22 revolver. He testified that the gun was "loaded" when they [Police Officers] took it from defendant. This testimony was admissible and relevant because the defendant testified that he had never owned a pistol, but owned only a large weapon for killing big game. Defendant's testimony and that of his witnesses, Florence Brown and Mary Medina, opened the door on the question of ownership of a gun, and made the testimony of the Police Chief admissible. It is always competent to present evidence to challenge the credibility of an adverse witness by proof of independent facts and circumstances inconsistent with his or her testimony. This rebuttal evidence was properly admitted by the trial court under our holdings in *Barry v. People,* 29 Colo. 395, 68 Pac. 274; and *Van Wyk v. People,* 45 Colo. 1, 99 Pac. 1009.

■ The record in this case shows that all instructions given the jury were submitted without objection on the part of defendant. It also discloses that no additional instructions were tendered by his counsel. In this state of the record, objections to the instructions given may not now be considered, since they are not properly before this court.

■ The evidence on the part of the People discloses that defendant told the Sheriff and the Police officers that he fired the gun at Jake Garcia and "that Lopez got in the way." From this evidence the jury might properly conclude that defendant intended to shoot someone, and since it is undisputed that the gun was fired and that the bullet struck Lopez, the evil intent involved in shooting at Garcia extends to Lopez, even

though unintended. It is no defense to show that the specific intent to do bodily harm was directed at A. rather than B. Had the gunshot wound in the instant case been fatal, the defendant might have been convicted of murder. *Ryan v. People,* 50 Colo. 99, 114 Pac. 306; *Henwood v. People,* 54 Colo. 188, 129 Pac. 1010.

█ Our statute [C.R.S. '53, 40-2-34] while requiring proof of a specific intent to do bodily harm to the person assaulted, does not relieve a defendant of responsibility for the consequences of his unlawful act because the victim is other than the person he intended to harm. The cases of *Shreeves v. People,* 126 Colo. 413, 249 P. (2d) 1020 and *People v. Hopper,* 69 Colo. 124, 169 Pac. 152, construing this statute do not involve facts comparable to the matter before us.

There being no prejudicial error in the record, the judgment is affirmed.